UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4819(DSD/SRN)


Operation Bass, Inc., doing
business as FLW Outdoors,

       Plaintiff,

v.                                                        **ORDER**

Perry Johnston,

       Defendant.


    Alain M. Baudry, Esq., Jerome B. Simon, Esq, Sarah
    Horstmann, Esq. and Maslon, Edelman, Borman & Brand, 90
    South Seventh Street, Suite 3300, Minneapolis, MN 55402,
    counsel for plaintiff.

    Kristina B. Heebner, Esq., Thomas J. Shroyer, Esq. and
    Moss & Barnett, 90 South Seventh Street, Suite 4800,
    Minneapolis, MN 55402, counsel for defendant.


    This matter is before the court on defendant's amended motion

to dismiss or alternatively to transfer venue.  After a review of

the file, record and proceedings herein, and for the following

reasons, defendant's motion is granted.


**BACKGROUND**

    Defendant Perry Johnston ("Johnston") is a professional

fisherman and resident of North Carolina.  Plaintiff Operation

Bass, Inc., d/b/a FLW Outdoors ("FLW"), is a Kentucky corporation

that organizes fishing tournaments.  This federal diversity action

arises out of Johnston's participation in those tournaments.

Beginning in 2005, FLW organized the Wal-Mart FLW Kingfish Tour ("Tour") - a saltwater fishing tournament with four qualifying events and a championship event in which the top fifty finishers from the qualifying events participate.  Between 2005 and 2007, FLW held Tour events in Florida, Louisiana, Mississippi, North Carolina and South Carolina.  Johnston participated in the Tour all three years and qualified for the championship event each year.

After the second day of the 2006 tournament, the top five teams competed for $100,000.  Johnston's team came in sixth place, and Johnston lodged an unsuccessful protest with the tournament director alleging that the fifth-place team finished the day without its captain on board in violation of the Official Kingfish Tour Rules.  In response to his unsuccessful protest, Johnston communicated his dissatisfaction on various occasions by telephone to FLW's Executive Vice President and Chief Operating Officer Kathy Fennell ("Fennell"), who was located in Kentucky.

After finishing in the top fifty in the 2007 tournament, Johnston alleged that FLW failed to award his cash prize.  As a result, on November 9, 2007, Johnston left a voicemail message with Fennell[1] threatening to sue FLW and all of the Tour's sponsors unless FLW met his demands.  Johnston specifically stated that:

---

[1] FLW identifies FLW's Executive Vice President and Chief Operating Officer as the individual with whom Johnston left the message. (Compl. ¶ 20.)  Based upon other documents in the record, the court understands that this refers to Fennell.  (See Heebner Aff. Ex. H; Johnston Aff. ¶ 12.)

> [W]e'll see how all your sponsors react when
> they get served with a lawsuit for a fishing
> tournament.    I  am  sure  they  will  be
> ecstatically happy .... [W]e are going to turn
> it over to the Associated Press and let them
> know that the FLW has been sued . . . [and] I
> will guarantee you that [unintelligible] when
> [your sponsors] get sued, I think they will
> drop any sponsorship.

(Compl. ¶ 20.)  Johnston also made blog postings on November 10,

2007, and November 12, 2007, stating that he was going to sue FLW

and the Tour's sponsors, speculating about how the sponsors would

react and indicating that he was "looking forward to seeing the

GREAT AND OMINOUS IRWIN JACOBS[2] ON THE STAND."   (Id. ¶¶ 18, 19.)

Moreover, in addition to his contacts with Fennell and the blog

postings, Johnston sent at least six e-mails, mailed one package

and made at least one telephone call to Jacobs in Minnesota

regarding his grievances with FLW.   In response, FLW informed its

sponsors, including Land O'Lakes, a Minnesota-based cooperative

with its principal place of business in Minnesota, about the

possibility of being named defendants in a lawsuit.

    On December 13, 2007, FLW filed a complaint in the United

States District Court for the District of Minnesota seeking "a

judicial declaration that FLW has not engaged in any fraud or false

advertising, and that Johnston has no claim against FLW arising out

of his participation in the FLW 2006 and 2007 Kingfish tournament,"

_____

    [2] Irwin Jacobs ("Jacobs") is FLW's Chairman and a Minnesota
resident.

and asserting a claim for tortious interference with prospective business advantage.  On December 28, 2007, Johnston filed suit against FLW and Wal-Mart Stores, Inc., in North Carolina state court, alleging breach of contract, breach of fiduciary duty and unfair and deceptive trade practices.  FLW removed the North Carolina action to the United States District Court for the Eastern District of North Carolina on January 30, 2008.  Johnston now moves to dismiss this action for lack of personal jurisdiction or in the alternative to transfer venue to the Eastern District of North Carolina.

## DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant.  See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).  In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party."  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted).  A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause."  Romak

USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted).   Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice."   Romak, 384 F.3d at 984.   "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."   Coen, 509 F.3d at 905 (citation and quotation omitted).  A defendant should reasonably anticipate being haled into court in a forum state within which he "purposefully avail[ed] [him]self of the privilege of conducting activities, ... thus invoking the benefits and protections of its laws."   Id. (citation omitted)   A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."   Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004).   The court gives significant weight to the first three factors.   See id.

Minimum contacts can establish personal jurisdiction in a forum state under two theories: general and specific jurisdiction. General jurisdiction is present when a defendant has "continuous and systematic contacts with the forum state," even if the injuries at issue did not arise out of an action directed at the forum state.  Id. at 1073 (quotations omitted).  However, because FLW does not assert general jurisdiction, the court considers only whether Minnesota has specific jurisdiction.  A forum state has specific jurisdiction when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Therefore, a court focuses on the first and third factors discussed above.  See Coen, 509 F.3d at 905.

Over the past ten years, Johnston has only visited Minnesota three times, and never to fish professionally.  Johnston maintains no office or staff in Minnesota, does not advertise in Minnesota and has no sponsors located in Minnesota.  Rather, Johnston's relevant Minnesota contacts are limited to those with Jacobs. Although related to FLW's claims, standing alone, such minimal contacts are insufficient to establish personal jurisdiction in Minnesota.  See Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (no personal jurisdiction despite numerous letters, faxes and telephone calls related to cause of action); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 966 F.

Supp. 833, 837 (D. Minn. 1997) ("Correspondence such as letters, facsimiles, and telephone conversations alone do not establish personal jurisdiction." (citation omitted)), aff'd, 148 F.3d 1355 (Fed. Cir. 1998).  Further, the final two factors do not affect the court's determination.  FLW, however, maintains that jurisdiction is appropriate under Calder v. Jones, 465 U.S. 783 (1984), because it alleges an intentional tort against Johnston.

When a plaintiff alleges an intentional tort, a court evaluates additional factors to determine whether the alleged tortfeasing defendant could "'reasonably anticipate being haled into court'" in the forum state.  Id. at 790 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); Dakota Indus., 946 F.2d at 1391 ("Calder requires the consideration of additional factors when an intentional tort is alleged."). Specifically, a court considers whether the alleged tortfeasor expressly aimed his intentional tortious conduct at the forum state and "knew that the brunt of th[e] injury would be felt" by the plaintiff in the forum state.  Calder, 465 U.S. at 789-90; see also Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008) (alleged tortfeasor must know plaintiff would feel brunt of injury in forum state); Dakota Indus., Inc., 946 F.2d at 1390-91.

In this case, FLW alleges that by "issuing improper and unlawful threats against FLW and its sponsors, [Johnston] has wrongfully and without justification interfered with FLW's

reasonable expectation of economic advantage or benefit with its sponsors by disrupting those relationships." (Compl. ¶ 27.) Further, FLW argues that it feels the brunt of the harm from Johnston's alleged tortious conduct in Minnesota because its principal place of business is in Minnesota and one of its sponsors is located in Minnesota. The parties dispute whether FLW's principal place of business is Minnesota or Kentucky. However, even if the court assumes that FLW's principal place of business is Minnesota and that as a result FLW feels the brunt of the harm caused by Johnston's alleged conduct in Minnesota, the record does not establish that Johnston knew FLW would feel the brunt of the harm in Minnesota.

Johnston's primary contacts with FLW outside of the Tour venue states was in Kentucky, and FLW promotes to the public and Tour participants that it is from Kentucky. Specifically, every check that FLW paid to Johnston came from a bank in Kentucky, Johnston registered for part of the 2006 Tour over the phone with an FLW representative in Kentucky and many of Johnston's complaints regarding the 2006 Tour were directed at Fennell in Kentucky. Moreover, FLW's website lists Kentucky as its main contact, the 2006 Tour advertising materials identify FLW as being located in Kentucky, the 2006 Tour's Captain's Entry Form required checks to be mailed to FLW in Kentucky and individuals interested in joining FLW were instructed to send membership forms to Kentucky. The only

evidence suggesting that Johnston knew FLW had any relationship with Minnesota is his contact with Jacobs.  However, even viewing the facts in a light most favorable to FLW, when compared to the volume of evidence indicating that FLW is from Kentucky, Johnston's limited contacts with Jacobs do not establish that Johnston knew that the brunt of the harm caused by his allegedly tortious conduct would be felt in Minnesota.   Therefore, Johnston could not reasonably anticipate being haled into court in Minnesota, and the court lacks personal jurisdiction.

Anticipating this result, FLW requests the opportunity to conduct jurisdictional discovery because it "has had no opportunity to seek discovery about Johnston's contacts with Minnesota." (Pl. Br. at 14.)  FLW seeks discovery specific to Johnston's contacts with Land O'Lakes but offers only the conclusory assertion that such discovery "is necessary to a determination of jurisdiction in Minnesota."  (Id.)  Without more, the court cannot conclude that jurisdictional discovery would be helpful or appropriate. Therefore, the court denies FLW's request.  See Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."(quotation omitted)).

Where a court lacks personal jurisdiction, it may either dismiss the matter or, in the interest of justice, transfer it "to

9

any other such court in which the action ... could have been brought at the time it was filed."  28 U.S.C. § 1631; <u>Superior Edge Inc. v. Maricopa County Cmty. Coll. Dist.</u>, 509 F. Supp. 2d 786, 795 (D. Minn. 2007).  Here, litigation involving the same or similar facts and issues has been stayed in the Eastern District of North Carolina pending issuance of this order.  Therefore, because FLW can pursue its claims against Johnston in that action, the interest of justice does not require transfer to another court. Accordingly, the court dismisses this action.


**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that defendant's amended motion to dismiss plaintiff's complaint or alternatively to transfer venue [Doc. No. 7] is granted, and this action is dismissed without prejudice for lack of personal jurisdiction.


**LET JUDGMENT BE ENTERED ACCORDINGLY**


Dated:  April 18, 2008


                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court